## BALDRICK v. GARVEY ET AL.

1. **Mortgage:** ACTION TO FORECLOSE: DEFENSE—PAYMENT OF DEBT AND INSANITY OF MORTGAGOR: EVIDENCE INSUFFICIENT. Upon consideration of the evidence, (see opinion), *held* that it was insufficient to prove that the maker of the mortgage sought to be foreclosed was insane when he executed it, and insufficient, also, to prove that the debt secured by the mortgage had been paid before the mortgage was made.

*Appeal from Polk Circuit Court.*

WEDNESDAY, APRIL 22.

ACTION to foreclose a mortgage. The Chicago Lumber

Company was made defendant, as claiming to have a mechanic's lien upon the premises. The court granted a decree foreclosing the mortgage, and established the mechanic's lien of the Chicago Lumber Company. The defendants, Garvey and wife, appeal.

*Cole, McVey & Clark*, for appellants.

*Callender & Smith*, for plaintiff, appellee.

*Berryhill & Henry*, for Chicago Lumber Company.

ADAMS, J.—The premises in question constitute the homestead of the defendant, John Garvey, and his wife. John Garvey is insane, and was at the time of the commencement of the action. He defends by guardian *ad litem*. The defense set up is that he was insane at the time of the execution of the notes and mortgage held by plaintiff, and at the time of the purchase of the lumber for which the Chicago Lumber Company claims a lien. In 1881, John Garvey employed the plaintiff to build a dwelling-house upon the premises in question, which house was completed in the fall of that year. In March, 1882, he purchased of the Chicago Lumber Company the lumber in question, which was used in making some improvements upon the premises. On the twenty-ninth day of September, 1882, the notes and mortgage were executed to the plaintiff. In the spring or summer of 1882 Garvey's mind became affected, and in January of the next year he was adjudged insane. His mind does not appear to have been greatly affected, if at all, as early as the purchase from the Chicago Lumber Company. Later, his mental weakness and aberration became more marked, and we cannot say that the question as to his capacity to execute the notes and mortgage, at the time they were executed, is entirely free from doubt. We have to say, however, that each one of us, upon a separate reading of the evidence, has reached the conclusion that he was competent to transact

such business. He owed Baldrick, for building the house, the amount for which the notes and mortgage were given, unless he had previously paid him. If he had paid him, it would appear that he had forgotten the fact, and that the plaintiff took advantage of his forgetfulness to defraud him. As tending to show payment, a receipt signed by the plaintiff was introduced in evidence, which is in these words:

"Des Moines, July 19, 1881.

" Received of J. Garvey the sum of ten hundred and fifty dollars, in full of building house on 831 Tenth street, Des Moines, Iowa.

"R. H. Baldrick."

The plaintiff offered to show by his own testimony that, at time the receipt was given, Garvey gave him his note as a temporary arrangement to cover the amount which it was supposed would become due under the contract, and that the arrangement was made because the plaintiff had become involved, and apprehended trouble with his creditors. But the court excluded the testimony, and one of the questions argued by counsel is as to the correctness of the ruling of the court in this respect. We do not find it necessary to pass upon this question, because, without the evidence, we are reasonably well satisfied that the payment shown by the receipt was not a cash payment. Garvey appears to have been in moderate circumstances, and Mrs. Garvey understood that the house had not been paid for. It is true, she says that she did not understand that the amount was much, but she appears to have signed the mortgage without a moment's hesitation. It is incredible that she should have done so, if she supposed that it was less than the amount of the mortgage, and doubted the capacity of her husband to do business. It is true that she says that she did not know what the paper was which she signed, but it was her business to know, and two witnesses who were present when she signed the mortgage show clearly that she understood the whole transaction. We believe, then, that she not only understood that

there was something due upon the house, but understood it to be the amount of the mortgage. It is shown, too, that Garvey, during the summer previous to the execution of the mortgage, expressed anxiety in regard to the indebtedness upon the house, and a desire to earn money to meet it.

There is something, indeed, upon the face of the transaction in which the receipt was given, which affects it with suspicion as evidence of a cash payment. It was given in July, and the house was not completed until October. But what we deem of most importance is the direct evidence of the condition of Garvey's mind. One Gray was present when the mortgage was signed, and heard a full discussion of the matter, and he says that "Garvey seemed as sound in mind as any man." Mr. Gray appears to have been a stranger, and to have had no interest in the premises or mortgage, or sympathy with either party. It is undisputed that at the time Garvey's mental trouble commenced he was in the employ of a railroad company as a locomotive engineer; that he was laid off for a while during the summer; that he improved, and on the second day of October, four days after the execution of the mortgage, he was placed by the company in charge of a locomotive on a construction train, where he continued about six weeks. One Dr. Rawson, a commissioner for the insane in Polk county, made a special examination of Garvey on the tenth day of September, being nineteen days before he executed the mortgage. Dr. Rawson says: "I did not discover that there was anything wrong. * * * Judging from this examination in September, I should think that he was capable of transacting ordinary business on the twenty-ninth of September." There was some other evidence tending to show his capacity, and also much tending to show his incapacity. His principal difficulty appears to have been a sluggishness of mind, and a forgetfulness of unimportant matters. But the matter in question, which it is alleged that he forgot, was not only not unimportant, but it was peculiarly such as a man in moderate circum-

stances might be expected to remember if he could remember anything.

We are not accustomed, in deciding questions of fact upon conflicting evidence, to attempt to set out all the evidence. We do not claim that the correctness of our conclusion can be demonstrated to a mathematical certainty. We content ourselves by saying that we think that the receipt was not given for a cash payment; that while Garvey's mind had begun to fail, he and his wife both understood the amount remaining due upon the house, and gave the mortgage for that amount with sufficient comprehension on his part to preclude the defendants from maintaining now that the mortgage is invalid.

AFFIRMED.